**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AARON L. CHAMBERS** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 1:04-CV- 0714** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, DEPARTMENT** | : | |
| **OF GENERAL SERVICES, ROBERT** | : | |
| **SPOLJARIC, CHUCK HODGE,** | : | |
| **GREGORY GREEN, JOHN** | : | |
| **KLINGER, BILL MYERS, SHERRI** | : | |
| **PHILLIPS, ANNETTE WATSON,** | : | |
| **PETER ZIRRILI, and PETER** | : | |
| **SEDESSE,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Defendants' Motion for Summary Judgment.  (Doc. No. 49.)   The motion has been fully briefed and is ripe for disposition.  For the following reasons, Defendants' motion will be granted in part and denied in part.

**I.**     <u>**Background**</u>

In 1985, Plaintiff, an African-American, began employment with the Commonwealth of Pennsylvania, Department of General Services ("DGS"), as a Journeyman's Assistant.  Plaintiff was promoted to Refrigeration Mechanic in 1988, and in 1994 or 1995 he was promoted to Refrigeration Mechanic Supervisor I.  Plaintiff has been a union member the entire time he has been employed with DGS and he has served as a union steward with Local #2162 as a Refrigeration Mechanic, and with Local #2245 as a supervisor.  (Doc. No. 50, ¶¶ 1-2.)

On September 10, 2002, Plaintiff was suspended for five days and demoted from his supervisory position.  Defendants maintain that the decision to demote Plaintiff was based on three incidents.  First, on August 8, 2002, Plaintiff had a conversation with his supervisor, Robert Spoljaric.  Defendant Spoljaric considered Plaintiff to be disrespectful and insubordinate during the conversation and reported the conversation to his supervisor and to Human Resources. (Doc. No. 50, ¶ 3.)  In Plaintiff's version of the conversation, Plaintiff asserts that Spoljaric threatened to discipline him over something that was outside Plaintiff's scope of responsibility.  Plaintiff acknowledges that he and Spoljaric disagreed over the issue, but Plaintiff denies that he was insubordinate or disrespectful. (Doc. No. 55, ¶ 3.)

The second given reason for Defendants' decision to suspend and demote Plaintiff was an automobile accident that occurred on August 10, 2002.  On that date, Plaintiff and a subordinate employee, Mark Kenno, used a state vehicle to pick up food at approximately 6:45 p.m.  According to Defendants, use of the state vehicle in this manner was impermissible.  (Doc. No. 50, ¶¶ 9-10.)  During this trip, Plaintiff and Kenno were involved in a traffic accident, which prevented their return to the work site until approximately 3:00 a.m. (Doc. No. 50, ¶ 4.)

The third reason given for the decision to suspend and demote Plaintiff was that on August 10, 2002, Plaintiff violated standard procedure by failing to station employees appropriately.  (Doc. No. 50, ¶¶ 7-8.)  Plaintiff disputes the existence of standard operating procedure and asserts that the procedures Defendants rely on were taken from a union agreement that had been overturned.  (Doc. No. 55, ¶¶ 7-8.)  Defendants also argue that on August 11, 2002, Plaintiff failed to respond to radio communications.  (Doc. No. 50, ¶ 11.)  Plaintiff acknowledges this failure, but asserts that there are places within the Capitol complex where

radio contact is not possible.  (Doc. No. 55, ¶ 11.)

On August 20, 2002, Defendants held a pre-disciplinary conference with Plaintiff. Thereafter, on September 10, 2002, Plaintiff was notified that he was being suspended and demoted effective September 16, 2002. (Doc. No. 50, ¶¶ 13-14.)  Mark Kenno, the subordinate employee who was with Plaintiff during the traffic accident on August 10, 2002, was also suspended for five days.  Plaintiff grieved the suspension and demotion, both of which were upheld in arbitration.  On November 15, 2002 a white employee was promoted to Plaintiff's former supervisory position.  Mr. Kenno also filed a grievance, and his suspension was ultimately overturned on February 2, 2003, but he was nevertheless reassigned to a different shift and different department.

On July 25, 2003, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that his suspension and demotion constituted racial discrimination.  The EEOC did not take action on Plaintiff's claim and issued him a right-to-sue letter on January 5, 2004.  (Doc. No. 30, ¶ 14.)

On April 2, 2004, Plaintiff initiated this action by filing a complaint against the Department of General Services as well as against several of its supervisory employees in their individual and official capacities.  (Doc. No. 1.)  On September 10, 2004, Plaintiff filed an amended complaint (Doc. No. 11) and on December 13, 2004, Plaintiff filed a second amended complaint.  (Doc. No. 30.)  On December 27, 2004, Defendants moved to dismiss the second amended complaint.  (Doc. No. 31.)  On June 10, 2005, this Court entered an Order granting in part and denying in part Defendants' motion to dismiss.  (Doc. No. 45.)  Following entry of the June 10th Order, the following claims remain: (1) a claim under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), brought against the individual Defendants for

alleged racial discrimination and retaliation; (2) a pendent state law claim brought against the

individual Defendants alleging violations of the Pennsylvania Human Relations Act ("PHRA");

(3) a claim brought under 42 U.S.C. § 1981 against individual Defendants; (4) claims brought

under 42 U.S.C. § 1983 against individual Defendants for violation of equal protection and due

process under the Fourteenth Amendment and for First Amendment retaliation; and (5) a claim

alleging conspiracy under 42 U.S.C. § 1985(3) against the individual Defendants.  (Doc. No. 51

at 5; Doc. No. 56 at 3.)

## II.    Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).  When deciding a motion for summary

judgment, the Court views the facts in the light most favorable to the nonmoving party, who is

"entitled to every reasonable inference that can be drawn from the record."  Merkle v. Upper

Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  However, the non-moving party may not

simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the

pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Summary

judgment should be granted where a party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Id. at 322.

**III.    Discussion**

    **A.    Title VII**

Defendants argue that they are entitled to summary judgment on Plaintiff's Title VII claim because the claim is time-barred due to Plaintiff's failure to file a timely charge with the EEOC within 180 days of the date of the alleged discriminatory conduct.  In his brief in opposition, Plaintiff fails to address the issue of timeliness.

Timely filing with the EEOC is a prerequisite to the maintenance of a Title VII action. Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 90 (3d Cir. 1981).  Generally, in order to be considered timely, an aggrieved party must file a charge with the EEOC within 180 days of the allegedly unlawful employment practice being challenged.  42 U.S.C. § 2000e-5(e)(1); see also Burgh v. Borough Council of Montrose, 251 F.3d 465, 470-71 (3d Cir. 2001) (explaining time limits under Title VII and the PHRA).  In deferral states, those states which have established state agencies to monitor and correct employment discrimination, the claim must be filed with the EEOC within 300 days of the impermissible employment practice.  42 U.S.C. § 2000e-5(e). In deferral states, a plaintiff must initially file his claim with the state agency then wait either until the state agency proceedings are terminated or for sixty days, whichever is sooner, before filing with the EEOC.  42 U.S.C. § 2000e-5©.

In Pennsylvania, the relevant parallel state agency for Title VII purposes is the Pennsylvania Human Relations Commission ("PHRC"), created under the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. ("PHRA").  Although there appears to be no evidence that

Plaintiff ever filed a charge with the PHRC, it is undisputed that he did file a claim with the

EEOC on July 25, 2003, in which he averred that his suspension and demotion constituted

unlawful racial discrimination.  Because the Court's decision regarding Plaintiff's Title VII

claim rests on other grounds, the Court will assume for the purposes of its discussion that the

PHRC received Plaintiff's EEOC complaint pursuant to the work sharing agreement that exists

between the two agencies, thereby satisfying Title VII's pre-filing administrative requirements.

See Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1414-15 (3d Cir. 1991) (regarding the EEOC

filing as the Pennsylvania filing in light of EEOC regulations regarding deferral to the

appropriate state agency); Brennan v. National Telephone Directory Corp., 881 F. Supp. 986,

993 (E.D. Pa. 1995) (noting that where there is a work share agreement, the aggrieved employee

meets Title VII's statutory filing requirement as long as the claim is filed with the EEOC within

300 days of the allegedly discriminatory conduct); cf. Berkoski v. Ashland Regional Med. Ctr.,

951 F. Supp. 544, 545, 547 (M.D. Pa. 1997) (work sharing agreement between the EEOC and

PHRC "effectuated a filing of discrimination charges with the EEOC on the same date he filed

his compliant with the PHRC").

It is undisputed that Plaintiff was suspended effective September 16, 2002, and that he

was demoted from his supervisory position on September 23, 2002.  These two employment

incidents are the only actionable claims Plaintiff has alleged regarding his own employment.

The Court calculates that 305 days elapsed between September 23, 2002, and July 25, 2003, the

date of Plaintiff's EEOC filing.  Accordingly, the Court concludes that neither Plaintiff's claim

regarding his suspension, nor his claim regarding his demotion, are actionable under Title VII

because Plaintiff failed to file claims relating to these separate events within Title VII's 300-day

time limit.

Although Plaintiff has ignored the issue of timeliness in his brief, the Court presumes that Plaintiff would attempt to save his claims by predicating them, at least in part, on the fact that on November 15, 2002, a white employee was promoted to Plaintiff's former position and that on February 2, 2003, Mark Kenno's suspension was overturned in arbitration.  Upon careful consideration, the Court does not find that either of these occurrences can form the predicate for Plaintiff's own claim of discrimination because they were not actions taken or directed toward Plaintiff; at most, they would be relevant as evidence to support Plaintiff's claims that his own suspension and demotion were racially discriminatory.  Because Plaintiff failed to file a timely claim with the EEOC alleging that his own suspension and demotion were discriminatory, the Court does not find that Plaintiff's claims can be saved by referencing evidence that a white employee was promoted to his former position or that Mr. Kenno's suspension was overturned.

For all of the foregoing reasons, the Court finds that Defendants' motion for summary judgment must be granted with respect to Plaintiff's Title VII claims.

### B.    PHRA

Defendants also move for summary judgment on Plaintiff's PHRA claim set forth in Count VI of the second amended complaint, asserting that Plaintiff's failure to pursue state administrative remedies precludes this claim.  Plaintiff ignores this issue in his brief opposing Defendants' motion.

The PHRA establishes a statutory right to be free from discrimination on several proscribed bases, including race, and sets forth the procedures for vindicating this right.  43 P.S. § 955(a) (unlawful employment practices); 43 P.S. § 959 (procedure for enforcement); see Clay

7

v. Advanced Computer Applications, Inc., 559 A.2d 917, 919 (Pa. 1989).  Thus, before a

plaintiff may initiate a judicial proceeding under the PHRA, he must pursue the administrative

process set forth in the statute.  Vincent v. Fuller Co., 616 A.2d 969, 974 (Pa. 1992); Clay, 559

A.2d at 918-19, 921; see also 43 P.S. § 962(c)(1) (Only after receiving notice of a PHRC

conciliation agreement or the PHRC's dismissal of the complaint, "the complainant shall be able

to bring an action in the courts . . . based on the right to freedom from discrimination granted by

this act").  These enforcement procedures include filing a complaint with the PHRC "within one

hundred eighty days after the alleged act of discrimination."  43 P.S. § 959(h).  After a complaint

has been filed with the PHRC, the commission has exclusive jurisdiction over that complaint for

one year, which serves as an exhaustion requirement.  Burgh v. Borough Council of Montrose,

251 F.3d 465, 471 (3d Cir. 2001).  The PHRC is required to give notice of this right to sue at that

time if no other resolution has been reached.

As discussed above, Plaintiff's suspension and demotion are the only actionable

employment incidents that Plaintiff has alleged.  It is undisputed that Plaintiff was suspended

effective September 16, 2002, and he was demoted on September 23, 2002.  Plaintiff did not file

with the EEOC until July 25, 2003, which the Court has calculated to be 305 days after his

demotion.  The Court has found no evidence that Plaintiff ever filed his discrimination claim

directly with the PHRC.  Thus, the Court will assume that the PHRC received Plaintiff's

discrimination complaint pursuant to the EEOC-PHRC work sharing agreement, for the reasons

discussed above, and construe his July 25, 2003, filing with the EEOC to be the date of his

PHRC filing.  However, this filing occurred 305 days after the last incident of allegedly unlawful

conduct, which far exceeds the PHRA's 180-day filing period.  43 P.S. § 959(h); see Gharzouzi

v. Northwestern Human Services of Penn., 225 F. Supp. 2d 514, 527 (E.D. Pa. 2002) ("As a general rule, if the PHRC does not receive the complaint within 180 days from the date of the alleged act of discrimination, whether filed with the PHRC directly or filed first with the EEOC and later transmitted by the EEOC to the PHRC, the plaintiff is precluded from pursuing claims under the PHRA.") (citing Woodson, 109 F.2d at 927).  Thus, Plaintiff failed to timely file his complaint with the PHRC and could not have exhausted the state administrative remedies as required by the PHRA.  Accordingly, the Court finds that Defendants' motion for summary judgment must be granted with respect to Plaintiff's PHRA claim contained in Count VI of his second amended complaint.

      **C.     Claims Brought Under 42 U.S.C. §§ 1981, 1983, and 1985(3)**

          **1.     Statute of Limitations**

      Plaintiff brings portions of his second amended complaint under 42 U.S.C. §§ 1981, 1983, and 1985(3).  Defendants argue that several of the allegations offered in support of these claims fall outside of the two-year statute of limitations applicable to claims brought under these statutes.  As with his claim under Title VII, Plaintiff failed to address Defendants' argument that his claims are barred by the applicable statutes of limitations, and he did not assert that his claims should be saved by application of equitable tolling, as this issue was addressed in the memorandum accompanying the Court's Order partially granting Defendants' 12(b)(6) motion to dismiss.  (Doc. No. 45 at 5-8.)

      Unlike Title VII, 42 U.S.C. §§ 1981, 1983, and 1985(3) do not have their own statutes of limitations.  The civil rights statutes, including §§ 1981, 1983, and 1985(3), contain a borrowing provision through which gaps in the federal statute, such as the absence of a specific statute of

limitations, are to be filled by referring to the common law, as modified by the laws of the state

in which the court holds jurisdiction.  42 U.S.C. § 1988.  Pennsylvania's statute of limitations for

personal injury actions is two years and begins running when the cause of action accrues.  Kost

v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993).  Suits brought under these statutes that are based

on torts alleged to have occurred in Pennsylvania are subject to a two-year statute of limitations.

Goodman v. Lukens Steel Co., 482 U.S. 656, 660-662 (1987) (Section 1981); Lake v. Arnold,

232 F.3d 360, 36 (3d Cir. 2000) (Sections 1983, 1985).  Plaintiff filed his complaint on April 2,

2004, alleging events which occurred both before and after April 2, 2002.  For the purposes of

Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1985(3), Defendants' motion for summary

judgment will be granted with respect to events occurring prior to April 2, 2002.

> **2.      Section 1981 claim and Section 1983 equal protection claim for racial discrimination**

In Count IV of his second amended complaint, Plaintiff alleges that Defendants violated

his rights under 42 U.S.C. § 1981.[1]  In Count II, Plaintiff alleges that Defendants' discriminatory

actions deprived him of equal protection of the law as guaranteed by the Fourteenth Amendment

in violation of 42 U.S.C. § 1983.[2]  Defendants have moved for summary judgment on both

---

[1]  Section 1981 provides as follows:
> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and
> equal benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and
> exactions of every kind, and to no other.

42 U.S.C. § 1981.

[2]  Section 1983, in pertinent part,  provides as follows:
> Every person who, under color of any statute, ordinance,

claims, arguing that Plaintiff cannot meet his burden of proof.  Specifically, Defendants refer to

their Title VII arguments and assert that Plaintiff will be unable to establish that Defendants

harbored a discriminatory intent or that their proffered legitimate, non-discriminatory reasons for

their actions were pretextual.

A plaintiff may establish a claim of disparate treatment under § 1981 and § 1983 through

direct evidence of personal discrimination or through the same burden-shifting framework for

Title VII.[3]  Stewart v. Rutgers, The State University, 120 F.3d 726, 423 (3d Cir. 1997); Weldon

---

regulation, custom, or usage, of any State or Territory or the
District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper
proceeding for redress . . .

42 U.S.C. § 1983.

[3] In Weldon, the Third Circuit indicated that the burden shifting framework established
in the Title VII case of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to
disparate treatment claims under § 1981 as well.  Weldon, 896 F.2d at 796-97.  Then, in Stewart
v. Rutgers, The State University, 120 F.3d 726 (3d. Cir. 1997), the Third Circuit recognized that
"the McDonnell Douglas-Burdine framework is applicable to [the plaintiff's] allegation of racial
discrimination under 42 U.S.C. §§ 1981 and 1983."  Stewart, 120 F.3d at 432 (emphasis added)
(evaluating concurrently plaintiff's § 1981 and § 1983 claims using the McDonnell Douglas
burden-shifting framework); see Morrissey v. Luzerne County Cmty. Coll., 117 Fed. Appx. 809,
814 n.4 (3d Cir. 2004) ("To make out a claim under the Equal Protection clause, a plaintiff must
prove that she suffered purposeful or intentional discrimination on the basis of gender.
Consequently, the showing a plaintiff must make for § 1983 gender discrimination is the same as
for Title VII claims.") (internal citation omitted); see also St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 506 n.1 (1993) (assuming applicability of McDonnell Douglas framework to
discrimination claim brought under 42 U.S.C. § 1983).  Because both § 1981 and § 1983 claims
based on circumstantial evidence utilize the same burden-shifting analysis, the Court will
address these counts of Plaintiff's second amended complaint together.
    Additionally, the Third Circuit has recognized that, where appropriate, the same
evidentiary burdens apply in both ADEA cases and Title VII cases.  Fuentes, 32 F.3d at 764 &
n.6.  Thus, the Court's use of both Title VII and ADEA cases in its discussion of Plaintiff's
§ 1981 disparate treatment and § 1983 equal protection racial discrimination claims is

v. Kraft, Inc., 896 F.2d 793, 796 (3d Cir. 1990).  Under this framework, Plaintiff must establish

that (1) he is a member of a protected class; (2) he was qualified for a position; (3) he suffered an

adverse employment decision; and (4) similarly situated people not in the protected class were

treated more favorably.  Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1065 n.5

(3d Cir. 1996) (en banc).  If a plaintiff demonstrates a prima facie case, then a defendant must

offer a legitimate non-discriminatory reason for the adverse employment decision.  If a

defendant makes such a showing, the burden shifts back to the plaintiff to show that the reason

proffered by defendant was pretextual.  For the purposes of summary judgment, the plaintiff

attempting to rebut an employer's stated non-discriminatory reasons as pretextual must "present

evidence from which a reasonable fact-finder could conclude either that the defendant's

proffered justifications are not worthy of credence or that the real reason for the decision was

discrimination."  Torre v. Casino, Inc., 42 F.3d 825, 832 (3d Cir. 1994) (citing Fuentes v.

Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).  Without the plaintiff "demonstrat[ing] such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons," Fuentes, 32 F.3d at 762, that a reasonable fact-finder could find

those reasons "unworthy of credence," Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d

509, 531(3d Cir. 1992), or presenting an illegitimate factor as more likely than not the

determinative cause of the decision, summary judgment should be granted.  Fuentes, 32 F.3d at

765.

 Defendants do not appear to challenge Plaintiff's ability to state a prima facie case (Doc.

No. 51, at 12) ("For the purposes of this Motion Defendants assume that Plaintiff has met his

---

appropriate.

prima facie burden"); rather, Defendants assert that their decision to suspend and demote Plaintiff was predicated on several legitimate, non-discriminatory bases.  For example, Defendants point to the fact that Plaintiff was insubordinate and disrespectful to his supervisor, Robert Spoljaric; that Plaintiff was absent without legitimate excuse from his job when he used a state vehicle for unauthorized purposes; and that Plaintiff neglected his "supervisory responsibilities."  With respect to the decision to overturn Mr. Kenno's suspension, but uphold the suspension and demotion of Plaintiff, Defendants emphasize that Mr. Kenno was a "subordinate employee" working under Plaintiff's direction, thereby justifying different treatment for his role in the August 10, 2002, accident with a state vehicle.  (Doc. No. 51 at 13.)

In his brief in opposition,[4] Plaintiff essentially repeats his conclusory allegations regarding the fact that a white employee was promoted to Plaintiff's supervisory position following his demotion and suspension, and the fact that a subordinate white employee's suspension was overturned in connection with the grievance process.  The entirety of Plaintiff's rebuttal contained in his opposition brief reads as follows:

> Plaintiff was clearly treated differently than his white co-workers.
> Plaintiff was replaced by a white employee in his supervisory
> position.  This pattern of different treatment for white employees
> clearly indicates that defendant's [sic] actions were motivated by
> discriminatory reasons.
> * * *
> Clearly, Kenno, who is white, committed the same violation [as
> Plaintiff] at the same time.  Kenno was suspended, however, his
> suspension was rescinded.  Plaintiff, who is black, was also
> disciplined, but his suspension was not rescinded.

---

[4]  Plaintiff addresses Defendants' § 1981 arguments in his brief in opposition, but fails to acknowledge Defendant's § 1983 equal protection argument.  Because the burden-shifting analysis is the same, the Court will assume that the Plaintiff would make the same argument under § 1983 as he did under § 1981 and Title VII.

(Doc. No. 56, at 9 and 11.)  These vague assertions are, on their own, inadequate to rebut Defendants' properly-supported arguments.  Furthermore, these statements on their own do not discredit Defendants' assertions.  Indeed, it at first appears that Plaintiff has done nothing more than repeat his evidence offered in support of his prima facie case in an effort to undermine Defendants' stated non-discriminatory reasons for their actions with respect to Plaintiff's suspension and demotion.  Consideration of the record submitted by the parties, however, reveals evidence that would support Plaintiff's effort to discredit Defendants' stated reasons for Plaintiff's demotion and suspension.  For example, in his deposition testimony, Plaintiff disputes that he was insubordinate or disrespectful to his supervisor.  (Doc. No. 55, ¶¶ 3, 19.) Additionally, there exists a factual dispute over whether Plaintiff's use of a state vehicle was unauthorized.  (Doc. No. 55, ¶ 9; Hodge Dep. at 54.)  Finally, there is a dispute over whether standard operating procedures that Plaintiff is claimed to have violated even existed.  (Doc. No. 55, ¶ 7; Spoljaric Dep. at 71-72.)  The Court finds that the foregoing evidence is sufficient to defeat Defendants' motion for summary judgment.  Since there exist genuine factual disputes as to the credibility of Defendants' reasons for Plaintiff's demotion and suspension, Defendants' motion for summary judgment on Plaintiff's § 1981 and his § 1983 equal protection racial discrimination claim will be denied.

### 2.  Section 1983 First Amendment retaliation claim

In Count III, Plaintiff argues that Defendants violated 42 U.S.C. § 1983 when they harassed and retaliated against him because of (1) "his expression of opposition to the biased and arbitrary employment actions to which he and other black and/or African American employees had been subject" and (2) his participation in protected union activities.

14

A claim of retaliation for engaging in an activity protected by the First Amendment is analyzed under a three-step process. Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001); Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996). The plaintiff must show (1) that the activity is protected;[5] (2) that the protected activity was a substantial motivating factor of the alleged retaliatory action; and (3) the defendant may defeat plaintiff's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct. Mt. Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Baldassare, 250 F.3d at 195.

Defendants assume for the sake of the motion that Plaintiff has engaged in protected activity and focus their arguments on the second and third prongs of the analysis. Specifically, Defendants argue that their decision was not motivated by Plaintiff's protected activity and that they would have made the same decision regardless of whether Plaintiff engaged in protected activity. Defendants again refer the Court to the legitimate, non-discriminatory reasons proffered in the Title VII section of their brief in support of summary judgment.

Plaintiff responds to this issue by citing his reputation for strong defense of union members' grievances[6] and asserting that he "he can prove at trial that his protected activity as a

---

[5] In this step, Baldassare also requires that plaintiff's interest in the speech must outweigh the state's countervailing interest as an employer in efficiently providing public services. 250 F.3d at 195.

[6] Defendants do not challenge Plaintiff's involvement in protected activity, and the Court will infer that Plaintiff's First Amendment claim is predicated on protected activity and not merely on Plaintiff's status as a union member with a reputation for vigorously representing fellow union members.

The only reference Plaintiff makes to the factual record in this portion of his argument is to paragraph 12 of the statement of material facts. (Doc. Nos. 50 and 55, ¶ 12.) In this paragraph, no time frame is given for Plaintiff's discussion of the various write ups he had received, and there are references to facts outside of the two-year statute of limitations period for

union steward was a substantial or motivating factor of plaintiff being demoted and suspended."

Plaintiff then states:

> Clearly, Plaintiff's history of zealous advocacy on behalf of other
> employees, and on his own behalf, was used against him as an
> employee unfairly.  This is a question of fact for the jury at trial, as
> is the third element which allows defendants to defeat plaintiff's
> claim by demonstrating that the same action would have been
> taken even if plaintiff was not a union steward.

As before, the Court finds Plaintiff's conclusory arguments to be inadequate on their own, and

Plaintiff's failure to provide any meaningful citation to the record is both inadequate and

confusing, given that Plaintiff submitted voluminous record evidence together with his brief in

opposition.  However, because the Court has determined that there exist genuine factual dispute

as to the credibility of Defendants' reasons for Plaintiff's demotion and suspension, as discussed

above, Defendants' motion for summary judgment on Plaintiff's § 1983 first amendment

retaliation claim will be denied.

### 3.     Section 1983 due process claim

Defendants challenge Plaintiff's general Fourteenth Amendment § 1983 claim (Count I

of Plaintiff's second amended complaint) in three parts, arguing: (1) rights created specifically

by Title VII, such as retaliation, are not recognized under general constitutional principles and

---

his § 1983 action.  The Court has independently reviewed the record, and, although many of the
time frames in Plaintiff's deposition are unclear, it appears that he has alleged participation in
union activities occurring after April 2, 2002.  (See Pl. Dep., Doc. No. 57, Exhibit 1.)  For
example, Plaintiff mentions an incident which appears to have occurred in April 2002 where,
after handing a supervisor union grievances, he was denied overtime despite being the "next in
line."  (Id. at 40-43; Spoljaric Dep. 34-35)  Plaintiff also discusses a period of time in the fall of
2002 where he was not allowed to do union business unsupervised in the north office building.
(Pl. Dep. at 106-112.)  Moreover, while Plaintiff does not specify the number of grievances that
he filed during the relevant time period, Plaintiff's general testimony suggests that his filing of
grievances on behalf of union members was a regular activity.  (See id. at 21-22.)

may not be pursued generally via a § 1983 action; (2) Plaintiff received significant procedural

due process, and thus his procedural due process claims fail; and (3) Plaintiff does not have a

property interest in his public employment, and cannot demonstrate a substantive due process

claim with respect to Defendants' decision to suspend and demote him.  Plaintiff has entirely

ignored Defendants' arguments on these points, and therefore, pursuant to Federal Rule of Civil

Procedure 56(e), the Court finds that summary judgment against Plaintiff on those issues is

warranted.

Moreover, a consideration of the merits of Plaintiff's claims in Counts I and II indicates

that summary judgment is appropriate.  Count I of Plaintiff's second amended complaint asserts

that Defendants violated Plaintiff's Fourteenth Amendment rights, but it does not specifically

identify any particular right protected by the Fourteenth Amendment.  The Court construes this

count as asserting a claim under the Fourteenth Amendment's Due Process Clause, and whether

Plaintiff's intended claim was for a violation of procedural due process, substantive due process,

or both, summary judgment is appropriate.

Plaintiff has not introduced evidence tending to suggest that his procedural due process

rights were violated.  Defendants do not dispute that Plaintiff was entitled to a notice and

opportunity to be heard prior to being deprived of his property interest in employment.  (Doc.

No. 51, at 18) (citing Cipriani v. Lycoming County Housing Authority, 177 F. Supp. 2d 303

(M.D. Pa. 2001); see also Cleveland v. Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)

(describing the "'root requirement' of the Due Process Clause as being 'that an individual be

given an opportunity for a hearing before being deprived of any significant interest.'") (emphasis

in original).  Rather, Defendants contend that Plaintiff received the process to which he was

entitled, and the Court agrees.  The record is clear that Plaintiff was provided with a pre-

disciplinary conference on August 30, 2002, before any action was taken to suspend and demote him to the position of refrigeration mechanic.  (Doc. Nos. 50 and 55, ¶¶ 12, 13.)  Additionally, after Plaintiff's demotion and suspension, he grieved his suspension and demotion all the way to an arbitration hearing.  (Doc. Nos. 50 and 55, ¶¶ 16-18.)  The record demonstrates that Plaintiff had ample opportunity, both before and after his suspension and demotion, to challenge Defendants' actions.

To the extent Plaintiff sought to assert a substantive due process claim, summary judgment on Count I is equally appropriate.  To assert a substantive due process claim, "a plaintiff must establish as a threshold matter that he has a property interest to which the Fourteenth Amendment's due process protection applies."  Nicholas v. Pennsylvania State Univ., 277 F.3d 133, 139-40 (3d Cir. 2000) (quoting Woodwind Estates, Lt. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000).  This initial inquiry focuses on the particular quality of the property interest to determine whether it is fundamental under the Constitution.  Nicholas, 227 F.3d at 140.  The Third Circuit has held that public employment is not a fundamental right protected by the Constitution; rather, it is a "wholly state-created contract right," which "bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution."  Id. at 142-43.  Because Plaintiff's interest in his employment with DGS is not a fundamental right protected by substantive due process, any claim under Count I for substantive due process violations must necessarily fail.

### 4.    Section 1985(3)

In Count V, Plaintiff asserts that Defendants engaged in a common scheme to suspend

and demote him in violation of 42 U.S.C. § 1985.[7]  The essential elements of a § 1985 claim are:

(1) a conspiracy; (2) motivated by racial or class-based discriminatory animus; (3) an act in

furtherance of the conspiracy; and (4) an injury to a person or a deprivation of any right or

privilege.  Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).  Circumstantial evidence is

sufficient to prove the existence of a civil conspiracy, given the difficulty of discovering direct

evidence of a conspiracy.  Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979) rev'd in part

on other grounds, 446 U.S. 754 (1980) (cited favorably in Melo v. Hafer, 912 F.2d 628, 638 n.11

(3d Cir. 1990)).  "[A]t least tacitly," the coconspirators must have agreed to engage in the acts to

deprive plaintiff of his right.  Santiago, 435 F. Supp. at 155.

In the second amended complaint, Plaintiff alleges that the grievance hearing following

the disciplinary action was infected with the same sort of discriminatory tendencies as were

present in the decision to discipline him in the first place.  (Doc. No. 30, ¶¶ 32-35.)  Defendants

contend that there is no evidence in the record to support Plaintiff's claim, and Plaintiff cites to

no evidence in his brief in opposition to Defendants' motion, relying instead on the following

rhetorical argument:

> The facts of this case should establish that the defendants engaged
> in a conspiracy with the intent to deprive plaintiff of the equal
> protection of the laws and in retaliation for his First Amendment
> activities.  Plaintiff was systematically treated differently than
> other employees with whom he worked who were not of the same
> protected class.  He was not allowed to work the same shift, due to
> medical restrictions, while other non-minority employees were
> allowed to stay on their assigned shift.  This is a clear
> discrimination on the part of the defendants.  Id.  As such,
> defendants [sic] motion on plaintiff's § 1985 claim should be

---

[7]  Count V also alleges violations of § 1986, alleging alternatively the power to stop a
conspiracy on the part of some of the Defendants but refusing or neglecting to do so.  However,
the § 1986 claim has already been dismissed in this case.  (Doc. No. 45, at 8.)

denied.

(Doc. No. 56, at 13-14.)  This conclusory argument, without evidentiary support, is insufficient to demonstrate material facts in support of a § 1985 conspiracy claim, and the Court finds Plaintiff has failed to come forward with evidence of a conspiracy among some or all of the Defendants.  Moreover, the Court's review of the record reveals insufficient evidence from which a jury could conclude that the Defendants entered into an agreement – either explicitly or tacitly – to deprive Plaintiff of his rights.  Accordingly, Defendants' motion for summary judgment will be granted with respect to Plaintiff's conspiracy claim.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AARON L. CHAMBERS** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 1:04-CV- 0714** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, DEPARTMENT** | : | |
| **OF GENERAL SERVICES, ROBERT** | : | |
| **SPOLJARIC, CHUCK HODGE,** | : | |
| **GREGORY GREEN, JOHN** | : | |
| **KLINGER, BILL MYERS, SHERRI** | : | |
| **PHILLIPS, ANNETTE WATSON,** | : | |
| **PETER ZIRRILI, and PETER** | : | |
| **SEDESSE,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

**AND NOW** this 28th day of December 2006, upon consideration of Defendants' Motion

for Summary Judgment (Doc. No. 49), and for the reasons fully set forth in the within

memorandum, **IT IS HEREBY ORDERED THAT** Defendants' Motion is **GRANTED IN**

**PART** and **DENIED IN PART** as follows:

1.  Defendants' Motion for Summary Judgment on Plaintiff's Title VII claims is **GRANTED**.

2.  Defendants' Motion for Summary Judgment on Plaintiff's PHRA claim is **GRANTED**.

3.  Defendants' Motion for Summary Judgment on Plaintiff's §§ 1981, 1983, and 1985 claims arising prior to April 2, 2002, is **GRANTED**.

4.  Defendants' Motion for Summary Judgment on Plaintiff's § 1981 claim is **DENIED**.

5.  Defendants' Motion for Summary Judgment on Plaintiff's § 1983 equal

21

protection claim is **DENIED**.

6.      Defendants' Motion for Summary Judgment on Plaintiff's § 1983 claim for First Amendment retaliation is **DENIED**.

7.      Defendants' Motion for Summary Judgment on Plaintiff's § 1983 due process claim is **GRANTED**.

8.      Defendants' Motion for Summary Judgment on Plaintiff's § 1985 claim is **GRANTED**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania